# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

DAVID MORGAN and STEPHANIE MORGAN,

      Plaintiffs,

v.

MINE SAFETY APPLIANCES COMPANY, LLC;
3M COMPANY;
AMERICAN OPTICAL CORPORATION;
CABOT CSC LLC F/K/A CABOT SAFETY CORPORATION;
AEARO TECHNOLOGIES LLC;
RALEIGH MINE AND INDUSTRIAL SUPPLY, INC.;
and EASTERN STATES MINE SUPPLY CO.,

      Defendants.

CIVIL CASE NO.  2:21-cv-00617
(formerly C.A. No. 21-C-112 in the
Cir. Ct. of Mingo County, WV)

## NOTICE OF REMOVAL

3M Company gives notice of removing this case from the Circuit Court of Mingo County, West Virginia, to the United States District Court for the Southern District of West Virginia, Charleston Division. This is the proper place to remove the state court case (civil action number 21-C-112), because this District and Division include Mingo County, where the case is pending.[1]

## INTRODUCTION

This is a personal injury action against 3M and other manufacturers of federally regulated respiratory protection equipment. Five Defendants, including 3M, made

---

[1]  28 U.S.C. § 1441(a).

respiratory protection equipment that Plaintiff Wade Morgan[2] says he used while working as a coal miner.[3] The other two Defendants are suppliers or distributors of mining equipment, who allegedly sold the respirators to Morgan's employers.[4]

Morgan alleges that, through 2018, he used 3M's N95 8210 respirator and its predecessor product, the 3M 8710 respirator, as well as other Respirator Defendants' products.[5] The 3M 8710 and 3M N95 8210 respirator are filtering facepiece respirators that underwent a testing and approval process overseen by the Bureau of Mines and the National Institute for Occupational Safety and Health (NIOSH)—before being sold to the public. NIOSH had and has ongoing supervision over the respirators' certification and manufacture.

Federal law precisely defines what is, and what is not, a respirator. A respirator is not a "mask" or "dust mask." For federal agencies to approve a product as a respirator under federal law, the product must satisfy the exacting federal regulatory requirements. One such requirement, for example, is that federal testing must show that an N95 respirator, such as the 8210, has at least a 95% filter efficiency.[6]

---

[2]   Plaintiffs are David Morgan and his wife, Stephanie Morgan, who asserts a loss-of-consortium claim.  Unless otherwise noted, all subsequent references to "Morgan" are to Mr. Morgan.

[3]   In addition to 3M, the other Respirator Defendants are Mine Safety Appliances Company, LLC; American Optical Corporation; Cabot CSC LLC; and Aearo Technologies LLC.

[4]   The two Supplier Defendants are Raleigh Mine and Industrial Supply, Inc., and Eastern States Mine Supply Co.

[5]   Complaint (attached as part of the state court record, Exhibit 1) at ¶ ¶ 15-17. Subsequent references to this document are simply "Complaint."

[6]   42 C.F.R. § 84.174(i).

And the reason why federal law imposes these strict obligations is clear. People across the world rely on the protection that properly designed and manufactured—and properly used—respirators provide. That has never been more obvious than in the past two years of Covid-19. Respirators remain at the front line of the world's fight against the pandemic. We have all become painfully aware of the differing levels of protection offered by, for instance, a cloth mask versus a properly used, NIOSH-certified N95 respirator.

The central theme of Morgan's case against 3M and the other Respirator Defendants is that the federal government got this all wrong when it applied these regulations to the Respirator Defendants' products. In Morgan's view, the federal agencies charged with protecting people misapplied their own regulations, by continuing to certify the respirators he allegedly used as respirators. And, Morgan alleges, 3M and the other Respirator Defendants induced the federal agencies' error through a long-running fraud.

3M denies Morgan's allegations. But, have no doubt, their resolution will have profound consequences for federal agencies, all respirator manufacturers, occupational safety, and public health. Federal agencies continue to regulate respirators, and millions of people rely on federally approved respirators, every day.

 If Morgan is right, then the way that federal agencies regulate that key class of products is called into substantial question. So, too, are 3M and its respirator products, on which medical professionals and others around the world have relied to protect themselves against Covid-19. Those products include one of the products that Morgan alleges he wore, the 3M 8210 N95. In this time of disinformation, an incorrect decision on that vital question of federal law risks potentially disastrous consequences, with

national and international implications. This is an essential and substantial federal question. This action belongs in federal court.

**GROUNDS FOR REMOVAL**

This case is removable under 28 U.S.C. § 1441, because it could have been filed in this Court under both 28 U.S.C. §§ 1331. The case presents a federal question, because the Complaint alleges that 3M and other Respirator Defendants misled a federal agency (NIOSH) for decades. These fraud-on-NIOSH allegations, the lynchpin of Morgan's claims, implicate important national interests meriting a federal forum.

**I.      This Court has federal question jurisdiction.**

Congress has authorized two paths for claims to "arise under" federal law, for purposes of 28 U.S.C. § 1331.[7] The first, "when federal law creates the cause of action asserted,"[8] is not applicable. But even a state-law claim may "arise under" federal law.[9] The Supreme Court has "condensed" this second path into a clear test.[10] "[F]ederal jurisdiction over a state-law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[11]

Where—as here—these elements exist, federal "jurisdiction is proper because

---

[7]    *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

[8]    *Id.*

[9]    *Id.* at 258.

[10]    *Id.*

[11]    *Id.*

there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."[12] The absence of a federal private right of action is "not dispositive of" congressional intent.[13]

Morgan alleges various ways that the Respirator Defendants misled the federal government and duped federal agencies into maintaining the certification of their respirators as compliant with federal law.[14] Take, for example, 3M. Morgan alleges 3M not only "fail[ed] to comply with NIOSH testing standards" but also "made false and/or misleading statements to NIOSH regarding 3M's testing of respirators which voided 3M's NIOSH approval."[15] 3M also allegedly knew that its 8710 respirator failed quality control tests, but "this information was never given to NIOSH which also voided the certification of the 8710."[16] And 3M allegedly "never designed" the 8710 and N95 8210 respirators "to meet the legal requirements, nor was the respirator capable of meeting

---

[12] *Id.* (quoting *Grable & Sons Metal Prods., Inc v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

[13] *Grable*, 545 U.S. at 318 (discussing *Merrell Dow Pharma. Inc v. Thompson*, 478 U.S. 804 (1986)).

[14] Complaint at ¶ 39. For simplicity, 3M subsequently refers to this count as the "fraud claim."

[15] Complaint at ¶ 29; *see also id.* at ¶ ¶ 20 (MSA "failed to meet its certification requirements"), 35(h) (All Defendants "failed to implement or enforce a valid quality control program to insure [*sic*] that the respirators were manufactured in compliance with federal certification regulations."), 35(i) (All Defendants "failed to manufacture a respirator which complied with federal certification regulations."), 41 (MSA, AO, Cabot, and Aearo "violated [various] provisions of federal law and federal regulations.").

[16] *Id.* at ¶ 29.

the legal requirements," including "the requirements of the Occupational Safety Health Act 29 C.F.R. 1910.134(e)(5)."[17]

These allegations are not confined only to 3M. In general, Morgan alleges that the Respirator Defendants sold products that didn't comply with "federal certification requirements" or "regulations."[18] Morgan also pleads that 3M and other Respirator Defendants were negligent in "failing to manufacture a respirator which complied with federal certification regulations," so much so that the defect "is not detectable by the user."[19] And Marcum further alleges that the Respirator Defendants used "governmental approval as a cover for selling" defective respirators.[20]

Those claims—which 3M denies—necessarily raise a substantial question of federal law. Federal resolution of that issue will not upset the congressionally sanctioned balance between federal and state courts. Morgan's claims thus arise under federal law and fall within the Court's original jurisdiction, under 28 U.S.C. § 1331.

A. **Morgan's fraud claim "necessarily raises" a federal question, because it can't be evaluated without analyzing and interpreting federal law and regulations.**

When a court must resolve a federal issue to rule on the plaintiff's claim, the

---

[17]   *Id.* at ⁋ 24.

[18]   *Id.* at ⁋ ⁋ 20 (MSA), 35(h) (all Defendants), 35(i) (all Defendants), 41 (MSA, AO, Cabot, and Aearo).

[19]   *Id.* at ¶ 35(i).

[20]   *Id.*

federal issue is "necessarily raised."[21] For example, resolution of a federal patent issue was necessary to resolving a legal-malpractice claim where the plaintiff had to prove that, had the defendant attorney litigated the federal patent issue, an earlier lawsuit's outcome would have been different.[22] Similarly, interpretation of an Internal Revenue Code provision was a federal issue that was necessarily raised where the defendant allegedly breached a contractual duty not to violate the provision; the plaintiff also alleged the defendant had fraudulently concealed the violation.[23] A federal question was not raised, by contrast, when the complaint did not allege that the defendant was "in violation of the Medicaid pricing scheme or any other federal law."[24]

Here, interpretation and analysis of federal regulations is not only central, but essential to Morgan's state-law claims. Consider the fraud claim, for example. To prevail on a West Virginia fraud claim, a plaintiff must prove, among other elements, that the defendant made materially false representations.[25] Morgan's fraud claim is about an alleged fraud first made on the federal government before its effects could be felt by the

---

[21]  *Gunn*, 568 U.S. at 259.

[22]  *Id.*

[23]  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 569 (6th Cir. 2007) (*en banc*). This Court has relied on *Mikulski* in discussing federal-question jurisdiction. *See, e.g.*, *Craddock v. Adon Network, Inc.*, No. 2:10-cv-01401, 2011 WL 1601331, at *4 (S.D. W. Va. Apr. 27, 2011).

[24]  *W. Va. ex rel. McGraw v. Rite Aid of W. Va., Inc.*, No. 2:09-0956, 2010 WL 454488, at *3 (S.D. W. Va. Feb. 1, 2010).

[25]  *Robinson v. Quicken Loans, Inc.*, 988 F. Supp. 2d 615, 632 (S.D. W. Va. 2013) (citing *Bowens v. Allied Warehousing Servs., Inc.*, 229 W. Va. 523, 530, 729 S.E.2d 845 (2012)).

public. In various ways, Morgan alleges that 3M's products did not comply with federal regulations and that it was fraudulent for 3M to represent that the products did.[26] But federal agencies (U.S. Bureau of Mines, MSHA, and NIOSH)[27] did, in fact, certify the 8710, beginning in 1972.[28] NIOSH did the same for the N95 8210, beginning in 1995 and continuing to this day.[29]

To prevail, Morgan must therefore prove, *inter alia*, that 3M secretly knew that its respirators did not comply with federal law, even though federal agencies said they did.[30] In other words, Morgan will have to prove that 3M defrauded federal agencies into maintaining its respirators' certification and that the agencies improperly discharged their duties and misapplied federal law. Proving that will necessarily require the trier of fact to analyze and interpret federal law and regulations.

---

[26]  Complaint at ¶¶ 49-50.

[27]  In 1995, MSHA "transferr[ed] the requirements for approval of respirators from 30 CFR part 11 to NIOSH, which is publishing the requirements elsewhere in this separate part of the Federal Register as a new 42 CFR part 84." Respiratory Protective Devices, 60 Fed. Reg. 30398-01, 30399 (June 8, 1995), *available at* 1995 WL 337816.

[28]  Exhibit 3 (8710 Respirator: May 24, 1972 Letter from Bureau of Mines to 3M Company; Mar. 30, 1987 Letter from NIOSH to 3M Company) at 1-2. The Court may take judicial notice of these documents, a matter of public record. *See, e.g.*, *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 506-07 (4th Cir. 2015) (collecting cases). The Complaint also makes 3M's allegedly fraudulent obtaining of NIOSH's approval "central" to the fraud claim, and references that approval, so this document is properly considered along with the Complaint. *See, e.g.*, *Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005).

[29]  Exhibit 4 (N95 8210 Respirator: Aug. 16, 1995 Letter from NIOSH to 3M Co.; N95 8210 respirator; Sept. 30, 1999 Letter from NIOSH to 3M Co.) at 1-4; *see Goldfarb*, 791 F.3d at 506-07 (judicial notice).

[30]  *See Robinson*, 988 F. Supp. 2d at 632.

Just as in *Gunn*, to prove his state-law fraud claim, Morgan will have to prove what federal law required 3M to do, and what federal law required the agencies to do.[31] Morgan's claim thus will "necessarily require application of [federal] law to the facts of [his] case."[32]

### B.  The federal issue is "actually disputed."

The next requirement is straightforward. If the parties disagree about the federal issue's resolution, then it is actually disputed.[33] Of course, 3M hotly disputes any allegations that it perpetuated a massive, decades-long fraud on the federal government, such that several federal agencies misapplied federal law when certifying and re-certifying 3M's respirators as compliant with applicable federal regulations. And 3M expects that the other Respirator Defendants will dispute the similar allegations levied against them. That shows the issue is "actually disputed."[34]

### C.  The federal issue is "substantial," because its resolution is important to the federal system as a whole.

"The substantiality inquiry" considers "the importance to the federal system as a whole."[35] "[I]t is not enough that the federal issue be significant to the particular parties

---

[31]  *Gunn*, 568 U.S. at 259.

[32]  *Id.*

[33]  *Id.* (citing *Grable*, 545 U.S. at 313).

[34]  *Id.*

[35]  *Id.* at 260.

in the immediate suit."[36] The inquiry requires the Court to make a "sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic."[37]

A federal issue is substantial when its "resolution . . . in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime."[38] In those circumstances, "the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts."[39]

One key marker of substantiality is if the dispute "center[s] on the action of a federal agency."[40] To evaluate substantiality, this Court has considered the Sixth Circuit's test:

> (1) whether the case includes a federal agency, and particularly, whether the agency's compliance with a federal statute is in dispute;
> (2) whether the federal question is important (*i.e.*, not trivial);
> (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal question is not merely incidental to the outcome); and

---

[36] *Id.*

[37] *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996).

[38] *Id.*

[39] *Id.*

[40] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006); *see, e.g., Morgan Cty. War Mem'l Hosp. ex rel. Bd. of Directors of War Mem'l Hosp. v. Baker*, 314 F. App'x 529, 536 (4th Cir. 2008).

(4) whether a decision on the federal question will control many other cases (*i.e.*, the issue is not anomalous or isolated).[41]

"[N]o single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case."[42] Some examples of what does *not* qualify:

- Allegations that a defendant intentionally misinterpreted an Internal Revenue Code provision did *not* present a substantial federal question, where the "case involve[d] no question of whether a government agency ha[d] complied with a statute or regulation."[43] Because an agency's action wasn't at issue, the federal government had only a "limited interest" in the litigation.[44] Resolution of the federal issue would have "provide[d] little if any precedent for future cases," and did not "implicate any broader or more substantial issues,"[45] because the "particular and very narrow" issue had "been at least partially superseded" by statute, so its resolution would "not be controlling over numerous other cases."[46]

---

[41] *Craddock*, 2011 WL 1601331, at *3-6 (S.D. W. Va. Apr. 27, 2011) (citing *Mikulski*, 501 F.3d at 569-74).

[42] *Mikulski*, 501 F.3d at 570.

[43] *Id.* at 569-71.

[44] *Id.* at 570.

[45] *Id.* at 571.

[46] *Id.*

- Likewise, an alleged breach of a consent decree was similarly not important to the federal system as a whole, where it did not concern a federal agency's action.[47]

- So, too, were allegations that concerned only a private party's compliance with federal regulations, where the plaintiffs did not allege that the federal agency "misapplied its own regulations in its oversight of" the regulated product.[48] Resolution of those allegations thus lacked "importance more generally to the federal regulatory regime and to other [product] manufacturers."[49]

By contrast, where a federal agency's application of its regulations is central to the dispute (even when the agency itself is not a party), the case *does* present a substantial federal question.

- In *Grable*, for example, a quiet title action between two private citizens turned on whether the IRS had improperly applied a federal statute. That issue was substantial, because the federal system had "a direct interest in the availability of a federal forum," to adjudicate federal administrative action.[50]

- An issue was also substantial when the federal system had a "compelling need for uniform interpretation of the relevant, complex statute (the Fair Labor

---

[47] *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 476 (6th Cir. 2008).

[48] *Burrell v. Bayer Corp.*, 918 F.3d 372, 385 (4th Cir. 2019).

[49] *Id.* at 385-86 (internal quotation marks and citations omitted).

[50] *Grable*, 545 U.S. at 315.

Standards Act, which included many "intricate and frequently-litigated exemptions").[51]

• And, allegations very similar to those here—that a federal agency would have applied its regulations differently, had the defendant not "intentionally withheld the truth about its products and its risks"—also presented a substantial federal issue in the Eastern District of Missouri case *Bader Farms, Inc. v. Monsanto Co.*, even though the allegations were part of a state-law claim.[52] There, the maker of genetically-modified seeds allegedly deceived a sub-agency of the U.S. Department of Agriculture into deregulating the seeds, setting in motion a chain of events that harmed the crops of other farmers not using those seeds. The alleged deception of a federal agency was the first link in the chain. Finding a substantial federal question, the *Bader Farms* court reasoned that "whether federal regulatory bodies fulfilled their duties with respect to the entities they regulate is 'inherently federal in character.'"[53]

Plaintiffs' allegations, like the claims in *Grable* and *Bader Farms*, satisfy *Mikulski*'s four substantiality factors. *First*, unlike other cases where this Court has

---

[51] *Harper v. Massey Coal Servs., Inc.*, No. 2:10-0894, 2011 WL 322558, at *6 (S.D. W. Va. Feb. 2, 2011).

[52] *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-cv-299 SNLJ, 2017 WL 633815, at *2-3 (E.D. Mo. Feb. 16, 2017).

[53] *Id.* at *3 (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).

concluded federal jurisdiction is not satisfied,[54] a federal agency's "compliance with [applicable] federal" regulations is plainly "in dispute."[55] In 1972, the Bureau of Mines granted "approval certification of 3M's No. 8710 single-use dust respirator under 30 CFR, Part 11"; reviewed and approved 3M's "quality control manual"; and told 3M it could "publicize the fact that your product has met the requirements of 30 CFR, Part 11."[56] That certification remained in place for years, including when NIOSH took over responsibility for overseeing the regulations at issue.[57] NIOSH did the same for the N95 8210 respirator, granting "approval of the models 8210 and 7048, halfmask, disposable N95 particulate respirators"; approving them "for protection at N95 particulate efficiency"; reviewing and accepting 3M's "quality control documentation"; and telling 3M it could "publicize the fact that this respirator has met the requirements of the Code of Federal Regulations, Title 42, Part 84."[58] NIOSH continues to certify the N95 8210 as compliant with federal regulations to this day.[59]

The agencies did not act arbitrarily.[60] Like any agency, they applied federal law

---

[54] *See, e.g.*, *Craddock*, 2011 WL 1601331 ("In this case, there is no federal agency involved, and no underlying question about the actions of a federal agency or interpretation of a federal law.").

[55] *See Mikulski*, 501 F.3d at 570.

[56] Exhibit 3 at 1-2.

[57] *See id.* at 3-4.

[58] Exhibit 4 at 1-2.

[59] *See id.* at 3-4.

[60] *See, e.g.*, *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies.").

and rendered a ruling. Morgan alleges that the Respirator Defendants defrauded the agencies into doing that. This puts the question of whether the agencies properly performed their duties under federal law, and properly applied their own regulations, squarely at the heart of this case. As in *Grable*, the federal system has a direct interest in providing a federal forum to these parties, given that federal administrative action is going to be on trial. And the dispute will "center [] on the action of a federal agency . . . and its compatibility with a federal [regulation]."[61]

*Second*, this federal question is "important," "not trivial."[62] The regulations that Morgan put at issue, including those codified at 30 C.F.R. Part 11, resulted from the "integration of all respirator approval schedules into a single rule."[63] If Morgan is right, then the agencies were prevented from properly carrying out their regulatory duties under this vital rule, based on a massive fraud. The process by which these federal agencies regulated respirators, and the decisions they made for decades, would be undermined if these claims were true.

And that would also undermine how respirators are regulated today. NIOSH still regulates respirators. If Morgan is right, then NIOSH is inept at applying its own regulations. Morgan's allegations thus have profound implications for how NIOSH maintains approval over all certified respirators—including those being used during the

---

[61] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (discussing *Grable*, 545 U.S. at 313).

[62] *Mikulski*, 501 F.3d at 570.

[63] David Spelce *et al.*, *History of U.S. Respirator Approval (Continued) Particulate Respirators*, 36 J. Int'l Soc. Respiratory Protection, vol. 2, 37-55 (2019), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7307331/.

Covid-19 pandemic, like the N95 8210 that Morgan allegedly used. Even though Morgan will present fact-specific allegations about the respirators he used, those allegations' import will be far broader, because they call into question how NIOSH applies its own regulations.

*Third*, the federal question is far from "merely incidental to the outcome."[64] Whether the federal agencies correctly exercised their duties under federal law is central to Morgan's fraud claim. If that federal issue is resolved in 3M's favor, then Morgan's fraud claim fails, and his other tort claims are called into serious question.

*Fourth*, resolution of this federal issue will potentially control other cases where plaintiffs allege that 3M perpetrated a fraud on the federal government. 3M was an innovator of filtering-facepiece respirators.[65] Morgan's fraud claims will require the jury to determine whether federal agencies correctly applied federal law to certify and re-certify those products. And that resolution will arguably control subsequent cases presenting the same theories.[66]

Morgan says 3M's actions perpetrated a fraud on federal agencies, a fraud allegedly so effective as to cause the agencies to misapply, for decades, regulations they wrote and administered. In this case, as in *Bader Farms*, Morgan's claim is "dependent on a finding that the agency decision . . . was incorrect" because, allegedly, the

---

[64]  *Mikulski*, 501 F.3d at 570.

[65]  *See* Exhibit 5 (3M Science of Safety Product Timeline) (noting 3M "[l]aunched [the] first NIOSH-approved filtering facepiece respirator").

[66]  *See Gunn*, 568 U.S. at 262.

Defendant had fraudulently not disclosed the truth about its product.[67] And, in this case as in that one, the claim also "purports to assert a right under federal statute" and "asserts that defendants violated [a] federal statute or regulation."[68] These claims are "facially dependent on the interpretation and application of the federal regulatory process" by which a federal agency "regulat[ed] the use of [the] products."[69] They therefore present a substantial federal issue.[70]

### D. Resolving this federal issue in federal court doesn't upset Congress's balance between federal and state courts, because state courts don't have a special responsibility for the issue.

A federal court lacks jurisdiction if federal resolution of the federal issue that the state-law claim raises would disrupt the congressionally sanctioned balance between federal and state courts.[71] Courts have found the federal-state balance is upset when states have a special responsibility for regulating the area at issue.

For example, states have a special responsibility for maintaining licensing standards for professionals, such as lawyers.[72] And that responsibility is particularly

---

[67] *King v. Monsanto Co.*, No. 1:19-cv-00129-SNLJ, 2019 WL 5213036, at *2 (E.D. Mo. Oct. 16, 2019) (discussing *Bader Farms*).

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Gunn*, 568 U.S. at 264.

[72] *Id.*; *see, e.g.*, *Kay v. McGuire Woods, LLP*, No. 2:11-cv-00341, 2012 WL 1067555, at *4 n.2 (S.D. W. Va. Mar. 28, 2012) (discussing how state has "greater interest than federal system" in "regulating the conduct of attorneys").

acute for lawyers, who are essential to state judicial systems and are traditionally officers of those systems.[73] So, the Supreme Court concluded in *Gunn* that a malpractice claim was not appropriate for federal resolution.

Similarly, courts have concluded that insurance claims can't appropriately be resolved in federal court without upsetting the balance. Through the McCarran-Ferguson Act and ERISA, Congress has chosen to leave insurance regulation to the states.[74] A suit involving insurance premiums thus could not be resolved in federal court without usurping that congressional choice.[75] Similar reasoning applied to claims about medical devices regulated under federal law. Hearing claims about them in federal court would usurp the balance between federal and state authorities.[76]

But when cases turn on federal agency action and interpreting federal statutes and regulations, their resolution in federal court does not upset the federal-state balance. So, for example, state breach-of-contract cases requiring interpretation of the Housing and Community Development Act (and its regulations) can be resolved in

---

[73] *Gunn*, 568 U.S. at 264; *see Kay*, 2012 WL 1067555, at *4 n.2.

[74] *See* 15 U.S.C. § 1011 *et seq.* (McCarran-Ferguson Act); 29 U.S.C. § 1191(a)(1) (ERISA provision excepting insurance from complete preemption).

[75] *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014).

[76] *Burrell*, 918 F.3d at 387-88 (brackets, internal quotation marks, and citations omitted).

federal court, without disrupting the congressionally sanctioned balance.[77] This is true even though claims for breach of contract are plainly state-law claims.

It's true here, too. A federal court's resolution of the federal issues Morgan raises won't upset the congressional balance between federal and state courts. Morgan's allegations do not involve an area over which states have any special responsibility. Instead, they concern whether federal agencies properly performed their duties under federal law. "This is not an area of concern traditionally reserved to the states."[78]

Morgan's allegations require a close analysis of how several federal agencies applied federal regulations that govern respirator certification and re-certification. Resolving that issue in federal court doesn't upset any congressionally sanctioned balance between state and federal courts.[79] Indeed, the federal government has a vital interest in the uniformity of such decisions. As one court put it, the "substantial federal question of whether the actions of a federal agency were correct" is one that "deserves the 'hope of uniformity that a federal forum offers on federal issues.'"[80] And this Court

---

[77] *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467-68 (7th Cir. 2015); *One & Ken Valley Hous. Grp. v. Me State Hous. Auth.*, 716 F.3d 218, 224-25 (1st Cir. 2013).

[78] *Chrisopherson v. Bushner*, No. 6:19-03267-CV-RK, 2021 WL 1692151, at *12 (W.D. Mo. Apr. 29, 2021) (concluding "issue of whether FEMA's map changes were proper" and complied with "relevant federal statutes and regulations" was substantial federal question satisfying federal jurisdiction), *appeal docketed*, 2021 WL 1692151 (June 30, 2021).

[79] *See Evergreen Square*, 776 F.3d at 467-68; *One & Ken Valley*, 716 F.3d at 224-25; *Bader Farms*, 2017 WL 633815, at *3.

[80] *Christopherson*, 2021 WL 1692151, at *12 (quoting *Grable*, 545 U.S. at 312).

recognized much the same in *Harper*: how a complex federal regulatory regime is applied merits federal consideration because of the "compelling need for uniform interpretation."[81]

Morgan may assert that federal jurisdiction here would improperly open the floodgates to federal court. But the Court need not be concerned that permitting a removal here will improperly swamp federal courts with state-law claims.

*First*, when the seminal *Grable* decision expressed concern about not sweeping "garden variety state tort" claims into federal court, it was concerned about negligence *per se* liability.[82] The fear was that whenever a plaintiff alleged that a defendant was liable under state law simply because the defendant had broken federal "mislabeling" law or committed any "other statutory violations," all of those cases would be swept into federal court.[83] The Supreme Court was rightly wary of allowing this without an indication that was Congress's intent.[84]

That is not the situation here. Morgan presents a negligence *per se* claim, to be sure. But his theory is much broader—and implicates federal agencies' interests and actions far more deeply—than the garden-variety negligence *per se* claim that the

---

[81] *Harper*, 2011 WL 322558, at *6.

[82] *See Grable*, 545 U.S. at 318-19 (collecting authorities discussing "negligence per se" liability theories); *see also Burrell*, 918 F.3d at 387 (discussing concern about "negligence per se claims").

[83] Grable, 545 U.S. at 319 ("A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal court.").

[84] *See id.*

Supreme Court was worried about. Morgan does not simply assert that the Respirator Defendants were negligent *per se* based on a simple statutory violation or mislabeling. The core of Morgan's fraud theory is instead that the Respirator Defendants perpetrated such a massive, long-standing fraud on several federal agencies that *the agencies improperly regulated the Respirator Defendants' respirators* for decades.[85] Essentially, according to Morgan, the Respirator Defendants were such good fraudsters that several federal agencies couldn't properly do their jobs.

This is no "garden variety" tort claim, that 3M can be presumed to have breached a state duty of care because it allegedly violated a regulation. Rather, this fraud-on-the-agency theory requires a close look at whether the alleged fraud meant federal agencies couldn't properly do what federal law required of them. Accepting federal jurisdiction over that particular claim does not open the doors of the federal courthouse anytime a plaintiff alleges a defendant's violation of federal law entitles the plaintiff to a presumption of a breach of duty under state law.

*Second*, and relatedly, Morgan's theory in this case is particular to the attorneys representing him. As this Court has recognized, that a "case is atypical" compared to other complaints about the same general subject matter shows that its resolution in federal court would not upset the federal-state balance.[86] While their counsel makes these extraordinarily detailed (and federally dependent) claims on behalf of clients in

---

[85] Complaint at ¶ ¶ 39-44.

[86] *Harper*, 2011 WL 322558, at *7 ("Given the unusual circumstances of this case, the court finds that exercising federal jurisdiction here 'will portend only a microscopic effect on the federal-state division of labor.'" (quoting *Grable*, 545 U.S. at 314)).

this litigation,[87] those claims are unusual. Plaintiffs represented by other counsel typically do not make the same allegations about a massive federal fraud.[88] So federal jurisdiction over *these two Plaintiffs'* particular claims will not mean that *every other* plaintiff's run-of-the-mill tort claim against 3M will be removable for the reasons presented here.

    *Third*, it's likely that only a small percentage of the respirator claims now pending will be fully worked up and tried. Inherent in efficiently managing complex litigation, bellwether or test cases are used to give parties reliable data on which to base future case management decisions.[89] That's equally true whether the claims are in state or federal court. Given the substantial federal issue that Morgan raises, a federal court is the appropriate forum for those relatively few, vital test cases. Once they are resolved, the rest of the inventory likely will follow.

---

[87] For example, 3M directs the Court to the recently filed notices of removal in *Adams v. 3M Co.* (E.D. Ky. No. 7:21-cv-00082-REW-CJS, Doc. 1); *Combs v. 3M Co.* (E.D. Ky. No. 7:21-cv-00084-REW-CJS, Doc. 1); *Hamilton v. 3M Co.* (E.D. Ky. No. 7:21-cv-00087-REW-CJS, Doc. 1); *Mounts v. 3M Co.* (E.D. Ky. No. 7:21-cv-00086-REW-CJS, Doc. 1); and *Yates v. 3M Co.* (E.D. Ky. No. 7:21-cv-00085-REW-CJS, Doc. 1). Those actions were filed on behalf of similarly situated plaintiffs by the same counsel as this action. The Court may take judicial notice of these matters of public record. *Black v. Hammers*, No. 3:19-cv-00582, 2019 WL 4875318, at *1 n.1 (S.D. W. Va.) (collecting authorities).

[88] *See, e.g.*, Exhibit 6 (Complaint in *Nelson v. 3M Co., et al.* (Cir. Ct. of Boone Cty., W. Va. Sept. 7, 2021)) ¶ ¶ 49-59. This complaint pleads an ordinary state-law fraud claim, making no allegations about 3M's allegedly defrauding the federal government into certifying its respirators. Again, the Court may take judicial notice of this matter of public record, filed in a West Virginia circuit court. *See, e.g.*, *Goldfarb*, 791 F.3d at 506-07.

[89] Federal Judicial Center, *Manual for Complex Litigation* § 22.315 (4th ed. 2004), *available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf.

3M is not saying that a federal question exists simply because respirators are subject to federal regulation. This case presents a federal question because of how Morgan has chosen to litigate it. Morgan chose to allege that 3M and the other Respirator Defendants committed a massive fraud, so effectively that they allegedly duped several specialized federal agencies and prevented them from properly applying federal law. This claim necessarily raises a disputed, substantial issue of federal law with profound implications for those agencies' applications of federal law, over several decades. The claim also calls into question how NIOSH continues to apply those regulations. Resolving that issue in federal court will not thwart any congressionally sanctioned balance between state and federal courts. The Court should conclude that because Morgan has chosen to assert a claim that arises under federal law, federal question jurisdiction exists.

## II.    3M has satisfied the technical requirements to remove the case.

This removal meets the technical requirements of timeliness, joinder, service, and notice.

Fewer than thirty days have elapsed since the Complaint was served on 3M.[90] That occurred on October 26, 2021, when the Complaint was served on the Secretary of State.[91] 3M has obtained the consent of all Defendants, including the Supplier Defendants.[92]

---

[90] 28 U.S.C. § 1446(b)(2).

[91] Exhibit 7.

[92] 28 U.S.C. § 1446(b)(2). The consents are attached as Exhibit 8.

The service and notice requirements are met. The state court record is attached as Exhibit 1 to this notice.[93] The required state court docket sheet is also attached as Exhibit 2 to this notice.[94] And 3M will file a written notice of this removal in the Circuit Court of Mingo County, a copy of which is attached as Exhibit 9 (excluding exhibits) to this notice. 3M will attach this notice as an exhibit to the state court filing and provide written notice of this removal to Plaintiffs.

* * *

3M gives notice that the above-styled action is removed from the Circuit Court of Mingo County, West Virginia, to the United States District Court for the Southern District of West Virginia, Charleston Division. Plaintiffs are notified to proceed no further in state court.

Respectfully submitted,

*/s/ Bryant J. Spann*
Bryant J. Spann (WVSB #8628)
Robert H. Akers (WVSB #9622)
Elizabeth L. Taylor (WVSB #10270)
THOMAS COMBS & SPANN, PLLC
P.O. Box 3824
Charleston, WV 25338-3824
Telephone:  (304) 414-1800
Facsimile:   (304) 414-1801
Email:  bspann@tcspllc.com
            rakers@tcspllc.com

*Counsel for Defendant 3M Company*

---

[93]  28 U.S.C. § 1446(a).

[94]  LR Civ P 3.4(b).

## <u>CERTIFICATE OF SERVICE</u>

I, Bryant J. Spann, counsel for the Defendants, certify that on the 24th day of November, 2021, the foregoing ***Notice of Removal*** was served upon the following counsel of record through the CM/ECF system:

Ashley N. Lynch (WVSB #11714)
Guy R. Bucci (WVSB #0521)
Hendrickson & Long, PLLC
P.O. Box 11070
Charleston, WV 25339
    *Counsel for Plaintiffs*

Johnny Givens (WVSB #13949)
Givens Law Firm, PLLC
240 Trace Colony Park Drive, Ste 100
Ridgeland, MS 39157
    *Counsel for Plaintiffs*

Michael B. Martin, Esq.
TX Bar #13094400
KY Bar #96907
699 S. Friendswood Dr., Ste 107
Houston, TX 77546-4580
    *Counsel for Plaintiffs*

Zane Cagle, Esq.
MO 353775
Fed. #499604
500 North Broadway, Suite 1605
St. Louis, MO 63102
    *Counsel for Plaintiffs*

Thomas M. Hancock (WVSB #10597)
Kendra L. Huff (WVSB #12459)
Alexander C. Frampton (WVSB #13398)
Nelson Mullins Riley & Scarborough LLP
949 Third Avenue, Suite 200
Huntington, WV 25701
    *Counsel for American Optical*
    *Corporation; Aearo Technologies LLC,*
    *Cabot CSC LLC f/k/a Cabot Safety*

Craig Banford (WVSB #7353)
J.H. Mahaney, II (WVSB #6993)
Dinsmore & Shohl
611 Third Avenue
P.O. Box 2185
Huntington, WV 25722
    *Counsel for Mine Safety Appliances*
    *Company, LLC*

Nicholas S. Johnson (WVSB #10272)
Bailey & Glasser LLP
1055 Thomas Jefferson St., NW, #540
Washington, DC 20007
    *Counsel for Mine Safety Appliance*
    *Company, LLC*

Glenn A. Huetter, Jr. (WVSB #7573)
Concetta A. Silvaggio, Esq.
Willman & Silvaggio LLP
5500 Corporate Drive, Suite 150
Pittsburgh, PA 15237
    *Counsel for Raleigh Mine & Industrial*
    *Supply, Inc. and Eastern States Mine*
    *Supply Company*

*/s/ Bryant J. Spann*
*Counsel for Defendant 3M Company*